PADDOCK-HAWLEY IRON COMPANY *et al.*, Defendants in Error, v. SAMUEL J. MCDONALD *et al.*,
Plaintiffs in Error.

Kansas City Court of Appeals, April 1, 1895.

1. **Marshaling Assets:** LIEN ON TWO FUNDS. The doctrine of marshaling assets may be invoked where one creditor has a lien upon two funds and another a lien upon but one of them. The former creditor will, in equity, be required to seek satisfaction first out of the fund upon which the other creditor has no lien.

2. **School Funds:** COUNTY COURT: CHATTEL MORTGAGE. Record in this case discloses no fact which would authorize a county to take a chattel mortgage to secure school funds, as the bonds were amply secured otherwise, as the statute only allows a chattel mortgage to be taken as additional security for such funds.

3. **Marshaling Assets:** FRAUDULENT CONVEYANCE: HOMESTEAD. A debtor mortgaged his homestead to secure a loan of the school funds. He subsequently gave a chattel mortgage on a stock of hardware to a trustee to secure certain specified debts and directed the surplus to be applied to the payment of the school debt. *Held*, that

the chattel mortgage, so far as it recognized the application of said surplus to the redemption of the homestead, was for the use of the debtor and for that reason void; and the surplus in the hands of the trustee could not be applied to the redemption of the homestead as against judgment creditors.

4. **Equity Jurisdiction:** CREDITOR'S BILLS. Where a debtor has placed his property in the hands of a trustee so that it can not be reached by an execution at law, a court of equity will interpose to discover such property to satisfy the execution of the creditor; and the filing of a creditor's bill, with service of process, creates a lien in the equitable assets of the judgment debtor.

5. ———: ———. Before a creditor can resort to equity by a creditor's bill, he is required to exhaust all the means in his power at law; but, where the issue of an execution would necessarily be of no particular utility, it may be dispensed with.

6. ———: JUSTICE OF THE PEACE: GARNISHMENT. The garnishment, in in a justice's court, of a trustee holding funds to be applied according to the instrument under which he holds them would necessarily involve the exercise of equity jurisdiction which is not conferred upon a justice of the peace.

7. ———: ———: ———. To defeat a creditor's right to his creditor's bill in equity, it is not enough that there is a remedy at law, but such remedy must be as practical and efficient to the ends of justice as the remedy in equity. And a garnishment before a justice of the peace, in a case like this, does not meet that requirement.

8. ———: CREDITOR'S BILL: PARTIES. A creditor who brings his bill in equity to reach assets is not required to make all other creditors of the debtor parties.

*Appeal from the Daviess Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Hamilton & Dudley* for plaintiff in error.

(1) There is no ground upon which plaintiff's action can be sustained, unless it is on the principle of marshaling assets, and the theory that McDonald's homestead rights were waived in favor of his general creditors by giving the mortgage to Daviess county.

The waiver of the homestead in favor of the mortgagee is not a general waiver, opening the door to all the creditors. The usual release clause is understood to be made with reference only to the mortgagee of the instrument though not confirmed to him in terms. Waples on Homestead and Exemption, sec. 7, p. 548, and cases there cited. The waiver of exemption in a mortgage is made with reference to the mortgage only; so, on foreclosure, if there be a surplus, after satisfaction of the mortgage, it is unaffected by the waiver, and is exempt as the land previously was. It is not open to prior mortgages or general creditors, since they were not contemplated in the waiver, and securing one creditor by mortgage on the homestead is not a waiver as to other creditors. Waples on Homestead and Exemption, sec. 8, p. 551, and cases cited; *White v. Fulghum et al.*, 10 S. W. Rep. 501; *McLaughlin v. Hart*, 46 Cal. 639; 9 Am. and Eng. Encyclopedia, 499; *Brown v. Coyard*, 68 Ill. 180; *McArthur v. Martin*, 23 Minn. 80; 53 N. W. Rep. 99; *Colby v. Crooker*, 17 Kan. 527; *Perkins v. Heiser, Adm'r*, 34 Mo. App. 465. (2) The homestead law in this state has always been liberally construed in favor of the claimant and upheld in the interest of the family. *Volger v. Montgomery*, 54 Mo. 577; *Rieche v. Westenhoff*, 85 Mo. 642; Jones on Mortgages, sec. 731; Thompson on Homestead and Exemption, secs. 4 and 5; *State ex rel. v. Mason*, 88 Mo. 222. (3) In several cases where the doctrine of marshaling securities was invoked and fully recognized, its application was refused by the courts because to apply it would be to destroy the right of homestead. *Dickson v. Chorn*, 6 Iowa, 19; *Marr v. Lewis*, 31 Ark. 203; *McArthur v. Martin, supra; White v. Fulghum, supra.* (4) Before plaintiffs can maintain their action or are entitled to the relief asked for in any event all creditors and par-

ties in interest must be in court. *Quackenbush v. Chase et al.*, 29 S. E. Rep. (N. Y.) 958. (5) Defendant had the same right to pay the county debt as any other debt mentioned in said trust deed and the trustee held it in trust for the use of said county and for the benefit of the personal securities on said bonds. R. S. 1889, secs. 3153, 8049 and 8056.

*J. F. Hicklin* and *Ed. E. Yates* for respondents.

(1) As to the school fund bonds, the deed of trust is to the use of the grantor McDonald and void under section 5169 of Revised Statutes. *State ex rel. v. Krutzer*, 38 Mo. App. 440; *Shoe Co. v. Gallant*, 53 Mo. App. 423; *Smith v. Ham*, 51 Mo. App. 433. The county must have known McDonald's purpose was fraudulent when deed of trust was made—the deed can bear no other construction—and for this reason the deed can not stand as to the bonds. *Hanna v. Finley*, 33 Mo. App. 645. (2) It is manifest that McDonald's purpose was not to secure the bonds, but to put the remnant of the stock, not rightfully his, for he owed for it, beyond the reach of his creditors and to his own use. Those bonds, as it is agreed, were doubly secured already. (3) But the county can not have it, for two additional reasons. *First*. Because, beyond all doubt, it is secure without taking any part of remainder of stock, while plaintiffs have nothing to look to for their claims, except this remainder. 3 Pomeroy's Equity Jurisprudence [2 Ed.], sec. 1414. *Second*. Because the bonds can not be secured by a chattel—the security being taken in violation of our statutes, and the deed of trust is a nullity—at least as to plaintiffs. Statutes, secs. 8055 and 8056.

SMITH, P. J.—This is a proceeding in equity by judgment creditors to reach a certain fund in the

hands of a trustee and subject the same to the payment of their claims. The case may be shortly stated thus:

Defendant McDonald, in August, 1892, mortgaged his homestead, situated in the city of Gallatin, to the county of Daviess, to secure two school bonds, executed by him to said county, for about $1,500, with certain persons as sureties thereon.

A year later, McDonald, finding himself in an insolvent condition and no longer able to carry on the hardware business in which he was then engaged, executed a deed of trust to the defendant Stephens as trustee, covering his stock of hardware, to secure a debt in favor of Hibbard, Spencer, Bartlett & Company for $928.58, and another in favor of the Farmers' Bank for $1,426.53. It was provided in said deed of trust that, after satisfying the two debts just mentioned, the remainder in the hands of the trustee, arising out of the sale of said trust property, should be applied by the trustee to the satisfaction of said school mortgage debt.

It is conceded that the trustee took possession of the stock of merchandise and proceeded to sell the same and to apply the proceeds arising therefrom in accordance with the provisions of the deed of trust. In the meantime, some manufacturing and business corporations who are plaintiffs in this suit, recovered each a judgment against McDonald before a justice of the peace, the aggregate amount of which several judgments, being something in excess of $1,000.

The prayer of the petition was to enjoin the defendant Stephens, trustee, from applying any of the trust funds to the discharge of the school mortgage debt, until the plaintiffs' judgments were satisfied; also for an order directing said trustee to apply the remainder of the trust funds left in his hands after paying the expenses of the trust, and the said debts of Hib-

bard, Spencer, Bartlett & Company and the Farmers' Bank, on the judgments of plaintiffs; and also further that the defendant, Daviess county, be enjoined from receiving from said trustee, any of said trust funds on said school mortgage debt, until the plaintiffs' judgments were fully paid, etc. It was admitted at the trial in the court below, that the personal sureties on the defendant McDonald's school bond were ample and that the homestead was worth $1,500. The decree was for the plaintiffs, in substantial conformity to the prayer of their petition; and the defendants have appealed.

The decisive question raised by the defendant's appeal, and which we are obliged to decide, is whether the court was justified in adjudging that the defendant trustee pay over to the plaintiffs, in satisfaction of their several claims, whatever part of said trust fund remained in his hands, after the payment by him of the two first debts named in the deed of trust, and the costs of executing the trust. The defendants, it seems to us, have misconceived the nature and object of this suit. The doctrine of marshaling securities is well established. It may be invoked where one creditor has a lien upon two funds, or two parcels of other property, and another creditor has a lien upon but one of them; the former creditor will, in equity, be required to seek satisfaction first out of that fund or property, upon which the other creditor has no lien. 1 Story, Eq. Jur., sec. 633; 3 Pom. Eq. Jur., sec. 1414; *Brown v. Cozard*, 68 Ill. 180; *White v. Fulghum*, 87 Tenn. 280; *Colby v. Crocker*, 17 Kan. 427.

The object of this suit is not to compel the county to exhaust its remedy on the school mortgage on the homestead, before being permitted to resort to the satisfaction of the same out of the fund in the hands of the trustee. It is conceded that the county has a mort-

gage lien on the homestead, but it is controverted that it has any lien, or right to satisfaction, out of any part of the trust fund.

The statute, by the clearest implication, forbids the loaning of school money on chattel mortgages. There may be, and, no doubt, are, cases where such money has been loaned as required by the statute (Revised Statutes, section 8056,) that a chattel mortgage may be taken as a further security. But, in the present case, the money was loaned on the homestead mortgage, and the personal securities, it is admitted, are, and were, at all times, ample. It does not seem that the county deemed the security insufficient and required other and additional security; nor that there was the slightest occasion for it to do so. The county was included in the deed of trust, covering McDonald's entire personal property, so far as appears from the record, without the request of either the county, or the sureties on his school bond. It does not appear that the county, or the sureties concerned themselves about the matter in any way. Nor was there any occasion for them, or either of them, to do so, since the value of the homestead was quite equal to the amount of the school mortgage debt. The act was voluntary and unsolicited by anyone. The record discloses no fact which would authorize the county to take a chattel mortgage, to secure its school bonds, already doubly and amply secured, nor does it appear that it requested or accepted such security.

The homestead was exempt by statute from being taken in execution in satisfaction of the plaintiffs' judgments; but the personal property which was included in the deed of trust was not so exempt. The effect of providing, in the deed of trust, that all of the proceeds arising out of the sale of the personal property covered by it, over and above that which was

required to pay the two debts therein specified, should be applied to the discharge of the school mortgage debt on the homestead, was to convert property which was subject to the payment of the judgments of the plaintiffs into a homestead which was not so subject. The effect of giving the deed of trust and carrying its provisions into execution, was to take property which was doubtless acquired, in part at least, from plaintiffs by purchase on a credit and to convert that property into money with which to acquire for McDonald, and place beyond the reach of his creditors, an unincumbered homestead.

It is thus plain to be seen that the mortgage was given for the sole and only purpose of disencumbering the homestead with the proceeds arising from the sale of property, which, in equity, and good conscience, should be applied to the discharge of plaintiffs' claims. The authority given to the trustee in respect to the payment of the surplus was as much for the use and benefit of McDonald, as if the deed of trust had provided in terms that such trustee had been authorized to purchase a homestead for the latter, or pay the same directly over to him, or to someone for his benefit. Under these facts, we have no doubt that the deed of trust, so far as it authorizes the application of said surplus to the redemption of the homestead, was for the use of McDonald, and is, for that reason, void under the statute. Revised Statutes, sec. 5169; *Smith v. Ham*, 51 Mo. App. 433; *Petring v. Chrisler*, 90 Mo. 649; *Bullene v. Barrett*, 87 Mo. 185; *Brooks v. Wimer*, 20 Mo. 503; *Reed v. Pelletier*, 28 Mo. 173; *Robinson v. Robards*, 15 Mo. 459. We are, therefore, of the opinion that the surplus in the hands of the trustee was not applicable to the redemption of the homestead as against the plaintiffs who are judgment creditors.

The next question is whether such fund can be

reached in the hands of the trustee by the judgment creditors, by a proceeding in equity, or, as said by the chancellor in *Hadden v. Spader*, 20 Johns. 553: "Whether a debtor who has placed his funds in the hands of a trustee, where they can not be reached by an execution at law, can put his creditors at defiance and enjoy the benefit of those funds which ought to be appropriated to the payment of his debts  *  *  *. Do not the great and comprehensive powers of a court of chancery, in relation to fraud and trusts, necessarily confer the right to come in aid of a court of law by compelling the trustee to pay over to the creditor the funds on which he has no claim, nor any right to withhold?" In *Taylor v. Jones*, 2 Alk. 600, it was decided that property not tangible by *fi. fa.* will be reached by a court of equity. In *Partridge v. Gopp*, cited in *Hadden v. Spader*, *supra*, it was decided that money in the hands of a donee might be reached. It was also declared in the latter case, that "no man has such power over his own property as to dispose of it so as to defeat his creditors, unless for consideration." In *McDermot v. Strong*, 4 Johnson's Chy. 690, it was stated, that, if a creditor has taken and exhausted all the means in his power at law, he will be entitled to the aid of a court of equity to discover property to satisfy his execution. In *Public Works v. Columbia College*, 17 Wall. 530, it was stated that "the jurisdiction of a court of equity to reach property of a debtor justly applicable to the payment of debts, even where there is no specific lien on the property, is undoubted. It is a very ancient jurisdiction, but for its exercise, the debt must be clear and undisputed and there must exist some special circumstances requiring the interposition of the court to obtain possession of and apply the property."

In *Dunphy v. Klensmith*, 11 Wall. 610, it was

remarked by Mr. Justice BRADLY, in delivering the opinion of the court, that "this case was clearly a case of chancery jurisdiction, and one necessarily requiring equitable, as distinguished from legal, relief. The property, according to the charge of the complainant, had been put beyond the reach of the ordinary process of the law. It had been disposed of by the assistance and through the co-operation of Dunphy, in such manner that the judgment creditors could not find it to satisfy their claims, or, if found, it was held by Dunphy under cover of an assignment which *prima facie* gave him the legal title." In *Mann v. Appel,* 31 Fed. Rep. 378, it was said, that, "the frequent cases brought to the attention of this court, where persons engaged in merchandising, buy on credit valuable stocks of goods, and then by comprehensive assignments, startling preferences, usually executed to relatives by blood or marriage, succeeded by unexpected failures, which leave the debtors enjoying all the comforts of apparent affluence, and the creditor ineffectually exhausting the remedies of the law for the recovery of his goods, or their unpaid value, would render it peculiarly unfortunate to commercial business interests, if courts of equity found it necessary to surrender their ancient jurisdiction over fraud, fraudulent assignments and implied trusts for the benefit of creditors;" citing *Curtis v. Wortman,* 25 Fed. Rep. 893; *Jeffrey v. Brown,* 29 Fed. Rep. 476; *Bernheim v. Bernheim,* 30 Fed. Rep. 885.

The general rule is that the filing of a creditor's bill and service of process, creates a lien in the equitable assets of the judgment debtor. It has been aptly termed an "equitable levy." *Pickens v. Dorris,* 20 Mo. App. 1; *Lackland v. Garesche,* 56 Mo. 271; *Pendleton v. Perkins,* 49 Mo. 565; *Bank v. Gage,* 93 Ill. 172; *Lynch v. Johnson,* 48 N. Y. 27; *Adist v. Butler,* 87

N. Y. 585; *Miller v. Sherry*, 2 Wall. 237; 2 Waits Actions & Def., 428; *Roberts v. Railroad*, 25 Barb. 662.

In the present case the insolvent debtor placed his property, which otherwise could have been taken for the payment of his debts, in the hands of a trustee, which the latter, under the authority of the deed of trust, converted into money to be appropriated for the debtor's benefit. While the money was in the hands of the trustee, the creditors obtained judgments against the insolvent debtor. Now, according to the equitable principles announced by the foregoing authorities, the plaintiffs are entitled to the decree which was rendered by the court below, unless a barrier, yet to be noticed, stands in the way.

It must be remembered that the authorities referred to require the creditor to exhaust all the means in his power at law, before entitled to the aid of a court of equity. So that the pertinent question here is, have the plaintiffs done that. They obtained judgments before a justice of the peace, but proceeded no further at law. Was it indispensably requisite for them, before seeking relief by their proceeding in equity, to sue out execution on said judgments and have the same 'returned *nulla bona*, or to have the trustee served with notice of garnishment and thus endeavor to reach the fund in his hands in that manner? The fund was, of course, of that intangible character that it could not be reached by execution, except, possibly, by the process of garnishment on such executions. The rule in this state is that where it is shown that the judgment debtor was insolvent, as here, and that the issue of execution would necessarily be of no practical utility, its issue may be dispensed with. *Turner v. Adams*, 46 Mo. 94; *Merry v. Freemon*, 44 Mo. 518.

And the proceeding by garnishment on the justice's executions would be of very doubtful utility. A justice of the peace has no jurisdiction in equity. R. S., sec. 6124; *Enloe v. Newland*, 22 Mo. App. 581; *Willis v. Stevens*, 24 Mo. App. 494 *Hicks v. Martin*, 25 Mo. App. 359. The determination of the questions that would arise in a garnishment proceeding under the statute, to reach the trust fund in the hands of the trustee in this case, would necessarily involve the exercise of equitable jurisdiction, which is not conferred upon justices of the peace.

But, if we are in error in respect to this jurisdiction, it may be further suggested that it is not enough to defeat the creditor, that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration, as the remedy in equity. *Boyce v. Grundy*, 3 Peters, 210; *Phillips v. Morrison*, 16 Ga. 137; *Mann v. Apell*, 41 Fed. Rep. 378; Pomeroy's Eq. Jur., 297. It is obvious that the remedy of garnishment before a justice of the peace, in a case like this, can not be said to be as practical and efficient to the ends of justice as that afforded by a court of equity. Accordingly, we are constrained to think, that the fact that plaintiffs did not sue out execution or resort to garnishment of the trustee therein, constitutes no barrier to the plaintiffs' right to pursue their remedy in equity.

It is further objected that, since it stands admitted that all the creditors of McDonald were not included in the suit, for that reason the decree can not be upheld.

*Edmeston v. Lyde*, 1 Paige, Chancery Rep., 637, was where the complainants filed their bill to obtain satisfaction of their judgment out of the equitable estate and choses in action of the defendants, which

could not be reached by execution at law. The question raised on the hearing was whether the other judgment creditors of the debtor ought to have been made parties. Chancellor WALWORTH, who delivered the opinion in the case, remarked: "I have once had occasion to examine this question elsewhere, and the conclusion to which I arrived was that the creditor whose execution at law was returned unsatisfied might file a bill to reach the equitable estate of the defendants *either in his own* name and for his own benefit; or, might join with others standing in the same situation, in a joint suit for their benefit in proportion to the amount due to *each*; or, they might file a bill in the usual way, in behalf of himself and all others standing in the same situation as judgment creditors, whose executions had been returned unsatisfied, and who might choose to come in under the decree and contribute to the expenses of the proceeding. The latter, at first blush, may appear the most equitable, but the two first are much more likely to secure a vigilant prosecution of the suit. * * * The other judgment creditors were not necessary parties, and the complainants are entitled to a preference in payment out of the equitable assets which belonged to defendants at the time of the commencement of the suit." This is a sufficient answer to the defendants' objection as to defect of parties.

For these reasons, we think that the decree should be upheld, which is accordingly ordered to be affirmed. All concur.